Filed 3/7/23  In re Kashmere S. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re KASHMERE S., a Person Coming Under the Juvenile Court Law. | B320857 |
| | (Los Angeles County Super. Ct. No. 19LJJP00581C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>JOHNEISHA C.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Susan Ser, Judge.  Affirmed.

Darlene Azevedo Kelly, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Interim County Counsel, Kim Nemoy, Assistant County Counsel, David Michael Miller, Senior Deputy County Counsel, for Plaintiff and Appellant.

_____

Johneisha C. appeals the juvenile court's jurisdiction findings and disposition order declaring Kashmere S., her newborn son, a dependent child of the court, removing Kashmere from Johneisha's custody, placing the child with his father, Kendrick S., under the supervision of the Los Angeles County Department of Children and Family Services, and ordering family maintenance services for Kendrick and enhancement services for Johneisha. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Sustained Dependency Petition and Disposition Orders*

The juvenile court on May 19, 2022 sustained an amended petition pursuant to Welfare and Institutions Code section 300, subdivisions (b)(1) (failure to protect) and (j) (abuse of siblings),[1] alleging Johneisha had a history of substance abuse including cocaine, marijuana and alcohol and was a current abuser of cocaine and marijuana, rendering her incapable of providing appropriate care for Kashmere, who was of such a young age as to require constant care and supervision. The sustained petition specifically alleged Johneisha had abused substances during her pregnancy with Kashmere, as evidenced by a positive toxicology screen for marijuana and cocaine on August 21, 2021. (Kashmere

_____

[1] Statutory references are to this code.

2

was born in March 2022.)  It also alleged Kashmere's siblings, D.P. and S.P.,[2] were previously dependent children of the court and had been permanently removed from Johneisha's care (and placed with a legal guardian) due to Johneisha's substance abuse. A count alleging Kendrick's substance abuse pursuant to section 300, subdivision (b)(1), was dismissed at the jurisdiction hearing, and he remained a nonoffending parent.

At the disposition hearing the same day, the court removed Kashmere from Johneisha and placed him with Kendrick under the supervision of the Department.  The court ordered family maintenance services for Kendrick and enhancement services for Johneisha, which included participation in a full drug and alcohol treatment program with aftercare and drug testing and individual counseling to address case issues.  Johneisha's visitation remained monitored, but the disposition order provided she could breast feed Kashmere and have unmonitored visits with him in the home of the paternal grandmother, where he and Kendrick were living, once she had completed four consecutive clean drug tests.  The Department was given discretion to liberalize Johneisha's visits "up to and including release to Mother."[3]

---

[2]     Kendrick was not the father of either D.P. or S.P.

[3]     The court scheduled a section 364 review hearing for November 21, 2022.  It was continued at Johneisha's request to December 27, 2022 for a contest.  A further section 364 review hearing is now scheduled for March 10, 2023.

2. *The Evidence Supporting the Juvenile Court's Findings*

a. *Proceedings involving Kashmere's half-siblings*

The Department first became involved with Johneisha and her family in July 2019 when law enforcement responded to an emergency call and found then-two-year-old S.P. covered with feces inside Johneisha's home, which was filthy and infested with roaches. Officers were concerned Johneisha was under the influence of drugs at the time.

Johneisha tested positive for cocaine in July 2019, but denied cocaine use, claiming she had found a bag of white powder in the street and a wind gust blew some of the substance into her face. Dependency proceedings were initiated. The juvenile court on October 15, 2019 sustained the Department's amended petition pursuant to section 300, subdivision (b)(1), based on the ongoing substance abuse of Johneisha and Thomas P., S.P.'s father. D.P. and S.P. were declared dependent children of the court in December 2019, and the children were removed from their parents' custody. Johneisha enrolled in, but failed to complete, several substance abuse programs and had positive tests for marijuana and alcohol during her reunification efforts. In March 2021 the court terminated Johneisha's family reunification services. The court granted a nonrelated extended family member legal guardianship of the children in July 2021 and terminated dependency jurisdiction.[4]

---

[4] On appeal we conditionally affirmed the juvenile court's findings and orders granting a legal guardianship for D.P. and S.P. and terminating dependency jurisdiction, remanding the matter for the court to enter a new visitation order specifying the frequency and duration of visits between Johneisha and the children and for full compliance with the inquiry and notice

4

b. *Johneisha's continuing drug use*

Johneisha sought medical treatment in August 2021. A pregnancy test revealed she was then six weeks pregnant. She also tested positive for cocaine and marijuana. When interviewed after Kashmere's birth, Johneisha admitted she had used marijuana prior to the medical visit but denied using cocaine. She insisted she had not known she was pregnant and stopped any drug use during the remainder of her pregnancy. In a subsequent interview Johneisha admitted using cocaine but repeated she did not know she was pregnant at the time and claimed she had recently used cocaine only that one time, explaining she was depressed about having lost D.P. and S.P. to their legal guardian.[5] Both Johneisha and Kashmere were negative for all drugs at Kashmere's birth in March 2022.

The juvenile court authorized Kashmere's removal from Johneisha following the child's birth, and the Department filed a section 300 petition on behalf of Kashmere on April 1, 2022. Johneisha enrolled in an outpatient substance abuse program, which she attended three days a week. Although an April 27, 2022 report indicated Johneisha was making some progress, the report also stated she had tested positive for opiates and alcohol during her most recent drug test. Johneisha said the opiate was

provisions of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) and related California law. (*In re D.P.* (Dec. 5, 2022, B315051) [nonpub. opn.].)

[5]    Johneisha—27 years old at the time of the jurisdiction hearing—said she started using cocaine when she was 21 or 22 years old but did so only when partying. She denied using cocaine consistently. She started using marijuana when she was 15 years old and stopped at age 20, "well like off and on."

from a prescription drug given to her following dental work and the alcohol was only a glass of wine. It appeared that Johneisha left her substance abuse program before the May 19, 2022 jurisdiction hearing: The Department told the court she had been discharged by the program; Johneisha's counsel responded she had been released from the program because of lack of transportation.

Reviewing this evidence to explain its decision to sustain the section 300, subdivisions (b)(1) and (j), counts, the juvenile court stated, "The court does note that Mother has a history of substance abuse. Her two other children referenced in the allegations were removed from her because of Mother's substance abuse, and they proceeded to legal guardianship. In addition, while Mother was pregnant, she tested positive. She claimed that she didn't know she was pregnant, but more concerning to the court, she denied using substances while pregnant, and, when presented with the positive test, she denied using. So Mother is not being forthcoming about her substance abuse issues. In addition, the court is concerned about the recent positive test for alcohol and opiates."

## DISCUSSION

1. *Governing Law and Standard of Review*

The purpose of the dependency law "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2, subd. (a); see *In re A.F.* (2016) 3 Cal.App.5th 283, 289; *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599.) In addition, the Legislature has declared, "The provision of a home

6

environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." (§ 300.2, subd. (a).)

Section 300, subdivision (b)(1), allows a child to be adjudged a dependent of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [¶] (A) The failure or inability of the child's parent or guardian to adequately supervise or protect the child. [¶] . . . [¶] [or] (D) The inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse." A jurisdiction finding under section 300, subdivision (b)(1), requires the Department to prove three elements: (1) the parent's or guardian's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness. (*In re L.W.* (2019) 32 Cal.App.5th 840, 848; *In re Joaquin C.* (2017) 15 Cal.App.5th 537, 561; see *In re R.T.* (2017) 3 Cal.5th 622, 624 ["section 300(b)(1) authorizes dependency jurisdiction without a finding that a parent is at fault or blameworthy for her failure or inability to supervise or protect her child"].)

Section 300, subdivision (j), authorizes dependency jurisdiction when "[t]he child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions." In considering the applicability of subdivision (j), the Legislature directed the juvenile court to "consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child,

7

the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child." (§ 300, subd. (j).) "'The broad language of subdivision (j) clearly indicates that the trial court is to consider the totality of the circumstances of the child and his or her sibling in determining whether the child is at substantial risk of harm, within the meaning of *any* of the [enumerated] subdivisions . . . . The provision thus accords the trial court greater latitude to exercise jurisdiction as to a child whose sibling has been found to have been abused than the court would have in the absence of that circumstance.'" (*In re I.J.* (2013) 56 Cal.4th 766, 774; accord, *In re D.B.* (2018) 26 Cal.App.5th 320, 327-328.)

Although section 300 requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing (*In re D.L.* (2018) 22 Cal.App.5th 1142, 1146), the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. (*In re I.J.*, *supra*, 56 Cal.4th at p. 773; *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383; *In re N.M.* (2011) 197 Cal.App.4th 159, 165.) The court may consider past events in deciding whether a child currently needs the court's protection. (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215-1216; *In re N.M.,* at p. 165.) A parent's "'[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue." (*In re S.O.* (2002) 103 Cal.App.4th 453, 461; accord*, In re J.N.* (2021) 62 Cal.App.5th 767, 775 ["[e]vidence of past conduct may be probative of current conditions and may assist [the Department] in meeting [its burden of proof]"]; *In re Kadence P.*, at p. 1384.)

8

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.""'" (*In re I.J., supra*, 56 Cal.4th at p. 773.) We review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence such that a reasonable trier of fact could find that the order is appropriate. (*Ibid*.; accord, *In re I.C.* (2018) 4 Cal.5th 869, 892.)

2. *Substantial Evidence Supports the Juvenile Court's Findings and Disposition Order*

Johneisha contends, notwithstanding her extended history of substance abuse, allowing her to retain care and custody of Kashmere created no risk of harm to her newborn son. She emphasizes Kashmere was healthy at his birth in March 2022, and both she and Kashmere tested negative for all substances at that time. Moreover, following her failed drug test in August 2021 when six weeks pregnant with Kashmere, the umbilical cord blood test indicated Johneisha had stopped using drugs from the first trimester of her pregnancy until the child was born. Johneisha insisted she did not know she was pregnant when she used cocaine and marijuana prior to the August 2021 test and explained the positive test for opioids and alcohol in April 2022

9

was due to acetaminophen and codeine, prescribed for her following dental treatment, and a glass of wine.

Omitted from this rather anodyne summary of the evidence, however, is Johneisha's denial after Kashmere's birth that she had continued to use cocaine following the termination of the prior dependency proceedings despite test evidence to the contrary and her repeated failure to successfully complete substance abuse programs while trying to reunify with Kashmere's siblings.[6]  (See *In re D.B.* (2020) 48 Cal.App.5th 613, 622 ["'[o]ne cannot correct a problem one fails to acknowledge'"]; *In re A.F.*, *supra*, 3 Cal.App.5th at p. 293 ["'[d]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision'"]; cf. § 300.2 ["[s]uccessful participation in a treatment program for substance abuse may be considered in evaluating the home environment"].)  Moreover, although, as Johneisha notes, relapse may be a normal part of recovery (see *In re B.E.* (2020) 46 Cal.App.5th 932, 941 ["[A] relapsed parent is far from hopeless.  It is decidedly *not* fruitless to offer services to a parent who genuinely made an effort to achieve sobriety but slipped up on the road to recovery"]), the prospect of further relapses for a parent like Johneisha with a decade-long history of substance abuse posed a substantial risk of harm to a newborn left in her care.  Weighing the likelihood and nature of that risk in a particular case is for the juvenile court.  (See *In re D.B.*, *supra*,

---

[6]     As the Department points out, Johneisha's unresolved substance abuse problem put her unborn child at substantial risk of harm when she again used cocaine and marijuana in August 2021, even if Johneisha did not realize she was pregnant at the time.

26 Cal.App.5th at pp. 328-329 [the substantial evidence standard does not permit the reviewing court to reweigh the evidence or resolve evidentiary conflicts]; *In re Yolanda L.* (2017) 7 Cal.App.5th 987, 992 [same]; see also *In re E.E.* (2020) 49 Cal.App.5th 195, 217 [juvenile court "'is in the best position to determine the degree to which a child is at risk based on an assessment of all the relevant factors in each case'"].)

As discussed, section 300, subdivision (j), gives the juvenile court greater latitude to exercise jurisdiction over a child whose siblings were subject to abuse than the court would have in the absence of the sibling abuse. (*In re I.J.*, *supra*, 56 Cal.4th at p. 774.) Here, less than one year before the juvenile court sustained the Department's petition to protect Kashmere, the court had determined Johneisha's ongoing, long-term substance abuse and failure to adequately address it created a significant risk of harm for Kashmere's siblings, justifying a permanent plan of legal guardianship for them. Considering the circumstances of the proceedings involving D.P. and S.P., as well as Johneisha's continued use of cocaine and marijuana after she lost custody of those children, the record amply supported the juvenile court's finding there was a significant risk of harm to the newborn Kashmere, as there had been to his siblings, even if we were to disregard the April 2022 positive test for opioids and alcohol. (See *In re Christopher R.*, *supra* 225 Cal.App.4th at p. 1216 [the exercise of dependency court jurisdiction is proper when a child is of such tender years that the absence of adequate supervision and care poses an inherent risk to his or her physical health and safety]; cf. *In re N.F.* (2021) 68 Cal.App.5th 112, 121 ["[i]n the context of a substance abuse problem that has repeatedly resisted treatment in the past, a showing of materially changed

11

circumstances requires more than a relatively brief period of sobriety or participation in yet another program"].)[7]

As for Johneisha's challenge to the order removing Kashmere from her custody and placing him with his nonoffending father, the evidence supporting the jurisdiction finding also supports the disposition order. As we have repeatedly held, a finding of substance abuse constitutes "'prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of harm'" for a child of "tender years"—that is, a child six years old or younger. (*In re Christopher R., supra*, 225 Cal.App.4th at p. 1219; accord, *In re Kadence P., supra*, 241 Cal.App.4th at p. 1385.) Kashmere was at risk of harm if he remained in Johneisha's care, and no reasonable alternatives to removal existed.[8] (See *In re L.O.*

_____

[7]    Because substantial evidence supports the section 300, subdivision (j), jurisdiction finding, we need not consider the juvenile court's additional jurisdiction finding under section 300, subdivision (b)(1). (See *In re I.J., supra*, 56 Cal.4th at p. 773 ["'[w]hen a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence'"].)

[8]    Although not argued at the jurisdiction/disposition hearing, on appeal Johneisha suggests a home-of-mother order conditioned on living with the paternal grandmother would have been sufficient to protect Kashmere because the paternal grandmother, a nurse, was familiar with the signs of substance abuse. The possibility of after-the-fact detection, however, does not adequately safeguard an infant from the risks associated with the neglectful actions of a parent under the influence of cocaine.

12

(2021) 67 Cal.App.5th 227, 238 ["'[t]he court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child'"]; *In re Kadence P.*, at p. 1383 [same]; *In re R.V.* (2012) 208 Cal.App.4th 837, 843 [same].)

## DISPOSITION

The jurisdiction findings and disposition order are affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.

---

Moreover, the court expressly authorized unlimited, unmonitored visitation in the paternal grandmother's home (and gave the Department discretion to release Kashmere to his mother) after Johneisha completed four successive negative drug tests—as a practical matter, essentially the equivalent of a home-of-mother order once Johneisha demonstrated her commitment to addressing the substance abuse problem that caused her to lose custody of her two older children.